OPINION
After a trial by jury, Danielle Barber was found guilty of intimidation of a victim, kidnapping, and two counts of rape. Barber was also found guilty of the firearm specifications which accompanied each count. The court imposed an aggregate sentence of thirteen years imprisonment. The court also adjudicated Barber a sexual predator.
On appeal, Barber asserts that the trial court erred in adjudicating him a sexual predator.
In determining whether Barber was a sexual predator, the trial court considered the trial evidence, the presentence investigation, the report and testimony of psychologist Barbara Bergman, and the testimony of, and the H.B. 180 form completed by, Michael Hurt.
From the record, it is clear that the trial court based its determination primarily upon the report and testimony of Dr. Bergman.
The court found the following aspects of Dr. Bergman's report and testimony significant to its deliberations.
1. The Juvenile Sex Offender Assessment Protocol (JSOAP)
Dr. Bergman's report states the following about the JSOAP:
 The actuarial instrument used in the present evaluation to assess reoffense risk (the JSOAP) is a recently-developed one, which has been tested on a small sample. Thus, the results of the JSOAP are tentative until further research is done with the instrument. However, it is the only actuarial instrument available at this time.
* * *
 The Juvenile Sex Offender Assessment Protocol (JSOAP), a measure of sex offender reoffense risk in juveniles, was also completed.
* * *
 Mr. Barber's full scale score is closer to the high risk and the sexual re-offense criterion groups.
 In summary, JSOAP results indicate that Mr. Barber presents a moderate to high risk for sex offense recidivism.
2. Barber's Age
Concerning Barber's age, Dr. Bergman's report states:
 Mr. Barber is presently 17 years, 11 months of age, which is in an age range that is statistically at a higher risk for recidivism, according to sex offender research.
3. Barber's Prior Criminal Record
The record indicates that prior to the offenses giving rise to the sexual predator determination, Barber had juvenile adjudications for assault, burglary, robbery and criminal damaging. The offenses giving rise to the sexual predator determination were committed while Barber was under the supervision of the juvenile court for prior delinquent behavior. Dr. Bergman stated in her report:
 The empirical literature on risk assessment with juvenile sex offenders is quite limited. In general, the one factor that consistently shows up in studies as having a strong relationship to reoffense risk is delinquency.
The Minnesota Multiphasic Personality Inventory-Adolescent Version (MMPI-A) was administered and, according to Dr. Bergman's report, revealed the following:
 Inspection of the personality profile indicated significant elevations on Scales 4 and 9. Such a profile is indicative of an adolescent who displays many acting-out behaviors (i.e. rebelliousness, authority conflicts, lying, impulsiveness, school or legal difficulties, and alcohol or drug problems). An adolescent with such a profile is also likely to be grandiose in his self-appraisal and impulsive, is likely to display excessive energy, and to have very poor social judgement.
 Such a personality profile is typical of adolescents who engage in delinquent behaviors.
* * *
 Research in both the areas of adult and juvenile sex offender recidivism indicate that previous criminal history is a risk factor for sex offense recidivism. In the case of Mr. Barber, there was a conviction for a Burglary charge when he was 16 years of age and he subsequently had difficulty complying with rules of probation. At some point, he was charge (sic) and convicted with Menacing charges. Mr. Barber also reported that he was incarcerated for six months at the Cuyahoga Hills Boy's School and was then placed on juvenile probation. He was on juvenile probation at the time that he was charged with the instant offenses.
4. Barber's Anti-Social Personality
Dr. Bergman testified that Barber could not be diagnosed until his eighteenth birthday as having an anti-social personality disorder. However, she made it quite clear that upon his eighteenth birthday, which would occur four days after the sexual predator hearing, she would make such a diagnosis.
 A. Well, in both the literature about juveniles and about adults, delinquent and anti-social behavior is one of the highest indicators of risk for re-offense of all kinds of offense.
 Reference to sex offenses, re-offense to non-sexual criminal behavior and anti-social personality disorder is an indicator of anti-social behavior and is a risk factor for re-offending. With Mr. Barber, because he's not 18 yet, he cannot be diagnosed today with anti-social personality disorder. It's an artifact of diagnosis. You cannot diagnose juveniles with that, with a personality disorder which is a fixed pattern.
 And by virtue of the developmental process, children and adolescents are not fixed, but his behavior and his lifestyle and when he turns 18, that's what I would diagnose. And that would be at the end of this month; literally, he's 18 on the 30th.
 Q. So he's 17-years-old, 11 months. If he were one month older, you would be able to diagnose anti-social personality disorder?
 A. That is the diagnosis I would give if he was 18.
Q. That would be significant?
 A. That's a risk factor. That increases risk for re-offending.
5. Overall Assessment
Dr. Bergman declined to render an opinion within a reasonable degree of medical certainty as to Barber's likelihood of engaging in future sexually oriented offenses. Nevertheless, she did provide a statement in terms of risk as follows: "Based on the assessment I would say that (Barber) presents a moderate to high risk for re-offending."
On appeal, Barber is critical of the testimony of Michael Hurt and the H.B. 180 Instrument. However, it is clear that the trial court placed little, if any, weight upon Mr. Hurt's testimony or the H.B. 180 Instrument. Barber also correctly observes that not all of the H.B. 180 factors applied to him, but that is usually the situation in sexual predator determinations.
Barber also points to the newness of the JSOAP as suggesting that it is not a reliable indicator of the risk of recidivism. Dr. Bergman conceded that the newness of the JSOAP was a shortcoming in her report and at the hearing, but this was not fatal to the State's evidence that Barber is a sexual predator, it being only one of several factors considered by the trial court. Barber also criticizes the court's reliance on the testimony concerning Barber's anti-social behavior because he is not eligible to be diagnosed as having an anti-social personality disorder until his eighteenth birthday. While this is so, it cannot be gainsaid that Barber has demonstrated anti-social behavior even though he could not be clinically diagnosed as having an anti-social personality disorder until he is eighteen, in this case, four days after the hearing.
Finally, Barber points to the fact that Dr. Bergman declined to offer an opinion on the ultimate issue of whether Barber was likely to engage in a future sexually oriented offense. It is not uncommon for psychologists in these proceedings to decline to render such an opinion. Dr. Bergman did state that Barber presented a moderate to high risk of recidivism. It is clear from the context of the question that the topic of recidivism was focused on sexually oriented offenses.
In our judgment, the trial court had an ample basis upon which to find by clear and convincing evidence that Barber is a sexual predator. The assignment of error is overruled. The judgment will be affirmed.
FAIN, J. and GRADY, J., concur.